John G. Balestriere*
Matthew W. Schmidt (Cal. Bar No. 302776)
**BALESTRIERE FARIELLO**
225 Broadway, 29th Floor
New York, New York 10007
Telephone: (212) 374-5401
Facsimile:   (212) 208-2613
john.balestriere@balestrierefariello.com
matthew.schmidt@balestrierefariello.com
*Attorneys for Plaintiffs and the Class*
*Pro hac vice application forthcoming*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ROSANNE VRUGTMAN** and **TAMMY GILLINGWATER**, individually, and for all others similarly situated, | Case No.: |
| Plaintiffs, | |
| - against – | **CLASS ACTION COMPLAINT** |
| **IT'S JUST LUNCH INTERNATIONAL LLC**, | **JURY TRIAL DEMANDED** |
| Defendant. | |

## NATURE OF THE CASE

1. It's Just Lunch International LLC ("IJL," the "Company," or "Defendant") positions itself as a premier dating service, offering to connect individuals interested in romantic relationships. The Company claims its highly trained experts offer personalized, sophisticated, and thoughtful matchmaking services.

2. These claims are false. In 2007, 170,000 class members brought suit against IJL, ending with a settlement that not only provided millions in compensation to such class members, but also was supposed to end the Company's misconduct.

3. Instead, IJL continues to engage in similar misconduct. The Company fraudulently induces single professionals, especially women, into contracts by promising them that IJL has multiple matches in its database. IJL members pay thousands of dollars for IJL's services only to discover that IJL either selects matches at random or that the Company lies about having other members in their region.

4. IJL is in violation of California's consumer protection statutes and is also liable for common law claims of fraudulent inducement and fraud.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this nationwide class action pursuant to 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005, because the matter in controversy exceeds $5,000,000, exclusive of interest and costs, and is a class action in which some members of the Class are citizens of states other than where Defendant is headquartered. *See* 28 U.S.C. § 1332(d)(2)(A).

6. This Court has personal jurisdiction because IJL is based in California, conducts business in California, and otherwise intentionally avails itself of

the markets in California. IJL also markets and promotes its services in California.

7.  Pursuant to 28 U.S.C. § 1391(a), venue is proper in the Central District of California because IJL resides in this District at 74130 Country Club Drive, Suite 202, Palm Desert, California 92260.

## PARTIES

8.  Plaintiff Rosanne Vrugtman is an individual residing in Staunton, Virginia and has been a client of Defendant IJL since July 2020.

9.  Plaintiff Tammy Gillingwater is an individual residing in Toronto, Canada and has been a client of Defendant IJL since September 2019.

10. Defendant IJL is located at 74130 Country Club Drive, Suite 202, Palm Desert, California, 92260.

## STATEMENT OF FACTS

### IJL's Origins

11. IJL, which advertises its services as "dating for busy professionals," was founded in 1991 in Chicago by a marketing executive named Andrea McGinty.

12. Since its formation, IJL has had tens of thousands of clients around the world, including in the United States, Canada, Australia, the United Kingdom, and Ireland.

13. IJL exercises complete dominion over its franchises around the world, which are independently owned and operated.

### IJL's Advertising and Marketing

14. On its website, IJL claims to have a process of "6 easy steps" to match members. IJL claims its service utilizes a "signature matchmaking process" that the Company has "fine-tuned over the past 29 years."

15. In step one of the matchmaking process, an IJL "dating specialist" interviews members to learn what they are "looking for in a potential

partner, what's worked for [them] in past relationships and – just as importantly – what hasn't worked."

16. In step two, IJL's "matchmaker" uses the information from the interview to find "the right match" for the member. The Company promises members that its matchmakers are "committed to knowing their clients, not just on paper, but on a true human level thanks to our regular interaction and communication with you."

17. In step three, IJL arranges a time and place for their members to meet on a date.

18. In step four, IJL collects, after the date, feedback to "fine-tune" their matchmaking process.

19. In step five, IJL offers members the option to place their membership on hold if the date is successful. IJL's matchmaking process concludes with step six, which encourages members to "have fun at every step and enjoy the adventure of meeting someone new."

### IJL's Lies and Misrepresentations

20. Members, however, do not have fun because IJL completely disregards the "6 easy steps" process. Consistently, IJL fails to regularly communicate and interact with its member clients.

21. Moreover, the Company also fails to provide "personalized hand-selected matches" when it selects matches at random, if it does provide matches at all.

22. But IJL asserts its "6 easy steps" process on its website and on initial marketing calls to induce prospective customers into joining the Company, where members may pay as much as $4600 for six dates.

23. On marketing calls, IJL regularly claims they have "multiple matches in mind" for prospective customers when, in reality, other members do not even reside in the customer's region.

24. As a result, Plaintiffs and Class members are fraudulently induced into entering into a contract based on IJL's misrepresentation of fact that was material.

### Tammy Gillingwater's Complaint Against IJL

25. Plaintiff Tammy Gillingwater ("Gillingwater") signed up for IJL's services on September 24, 2019. Gillingwater learned about IJL's "6 easy steps" process in her initial call with an IJL sales representative, who was also a matchmaker.

26. The matchmaker asked Gillingwater to describe her ideal partner, whom Gillingwater described as a fit man with a healthy lifestyle. At that point, IJL's representative interrupted Gillingwater to exclaim, "John!"

27. John, the representative explained, was one of the men she had in mind for Gillingwater. The matchmaker further explained that she had "a couple of people in mind" for Gillingwater if she signed up for the service.

28. The representative went beyond IJL's "6 easy steps" process and promised to match Gillingwater with a date within forty-eight hours of her signing a contract with IJL.

29. In light of IJL's website and the matchmaker's verbal representations, Gillingwater signed a six-month agreement with IJL for $6,160.00 CAD (approximately $4,700 USD).

30. But IJL did not arrange a date for Gillingwater within forty-eight hours. In fact, Gillingerwater had to follow up with IJL herself on multiple occasions before the matchmaker arranged her first date, which was several days later than initially promised.

31. Gillingwater, who was eager to move forward with IJL's costly dating services, met her first date in October 2019.

32. Gillingwater's first date was a scam. Her first date described himself as a friend of IJL's director of sales and explained how he was asked to go

on dates with female members because IJL did not have enough male members.

33. Gillingwater, hoping that the Company's services would improve, proceeded to go on a date with another member that IJL connected her to.

34. Her second date, however, told her he was not a current IJL member and that the Company had also asked him to go on dates with their female members as they did not have enough male members.

35. IJL induced Gillingwater into a contract by maintaining that the Company could match her with other members, a fact Gillingwater had relied on in her decision to join IJL.

### Rosanne Vrugtman's Complaint Against IJL

36. Plaintiff Rosanne Vrugtman ("Vrugtman") was induced to sign up for IJL's services with similar misrepresentations of fact that were material to her decision to join IJL.

37. Vrugtman joined IJL on July 20, 2020.

38. In her initial call with IJL, Vrugtman expressed her interest in meeting men with similar interests in the Charlottesville, Virginia area.

39. Immediately, the matchmaker confirmed to Vrugtman that IJL would introduce her to men in the Charlottesville area.

40. Vrugtman, based on the matchmaker's representation that IJL had other members in the Charlottesville area, paid $2,595 for twelve months of service from IJL.

41. But Vrugtman's first date was in Richmond, Virginia, a two-hour drive from the Charlottesville area. Vrugtman also realized, upon meeting her date, that IJL did not hand select her match, as he had nothing in common with her.

42. Following her date in Richmond, Vrugtman provided feedback on IJL's failure to connect her with a match in Charlottesville.

43. Vrugtman was introduced to another matchmaker, who continued to maintain that IJL had matches for Vrugtman in or near Charlottesville but insisted on a date in Richmond.

44. When Vrugtman raised her concerns, the matchmaker replied that Vrugtman was acting "rough around the edges."

45. Vrugtman proceeded to work with the matchmaker to learn about another man, who the matchmaker said may live in Charlottesville.

46. When Vrugtman inquired further about the possible date and if he was actually in Charlottesville, the matchmaker replied that she would have to check, as "he is not my client."

47. The matchmaker ultimately canceled the date.

48. Vrugtman, like Gillingwater, was induced by IJL's website and initial marketing calls to join a service that does not provide personalized matches.

49. IJL, it turns out, is in the business of randomly matching its members, if they are members at all, and does not offer authentic dates, despite its supposed commitment to providing personalized services.

## CLASS ACTION ALLEGATIONS

50. Plaintiffs bring this class action pursuant to Federal Rule of Civil Procedure ("Rule") 23 in their representative capacity on behalf of themselves and the Class of all other IJL clients similarly situated.

51. Any member who signed up with IJL and its franchises, on or after September 12, 2019 and without a binding arbitration agreement, is considered a Class member.

52. **Numerosity**. Although the exact number of Class members is presently unknown to Plaintiffs (though it is known to Defendant), Plaintiffs believe that there may be thousands of consumers. There are

enough Class members to support a new action. The members of the Class are so numerous that joinder of all members is impracticable.

53. **Commonality**. A substantial pool of questions of law and fact exists that is common to the Class. Such common questions include, but are not limited to:

     a. Did IJL make false and misleading representations as to the nature and quality of dating services that IJL provided?

     b. Did IJL fraudulently induce Class members to enter into agreements by affirmatively misrepresenting the quantity or characteristics of IJL members?

54. **Typicality**. Plaintiffs' claims are typical of the claims of the Class. Plaintiffs are ordinary IJL clients who, along with all Class members, entered into IJL contracts in which they paid thousands of dollars for services which they would not have paid for if they had not been misled by Defendant into believing that the Company had a database of dates to provide personalized matchmaking services. The factual bases of IJL's misconduct are common to all Class members.

55. **Adequacy**. Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs have no interests that are antagonistic to or in conflict with the interests of the Class as a whole, and Plaintiffs have engaged competent counsel experienced in the prosecution of complex and class litigation.

56. **Superiority.** A class action is superior to the alternatives, if any, for the fair and efficient adjudication of the controversy alleged herein, because such treatment will permit the large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without duplication of the evidence, effort, and expense that numerous individual actions would engender due to the geographically

diverse locations of the various Class members. This action will result in the orderly and expeditious administration of Class claims. Uniformity of decisions will be assured, thereby avoiding the risk of inconsistent and varying determinations.

57. Plaintiffs are not aware of any difficulty that will be encountered in the management of this litigation which would preclude its maintenance as a class action.

58. **Maintainability**. This action is properly maintainable as a class action for the prior independent reasons and under the following portions of Rule 23:

    a. The individual amounts of restitution involved, while significant, are generally so small that individual actions or other individual remedies are impracticable and litigating individual actions would be too costly;

    b. Individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation;

    c. Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole; and

    d. Individual actions would unnecessarily burden the courts and waste judicial resources.

59. **Predominance.** Questions of law and fact common to members of the Class predominate over any questions affecting only individual members.

60. Notice to the members of the Class may be accomplished inexpensively, efficiently, and in a manner best designed to protect the rights of all Class members.

61. California, as IJL's principal place of business and known data control center, is the center of gravity for this action such that it is appropriate and consistent with existing law to certify a nationwide class of consumers, applying California law.

62. Certification of a nationwide class under the laws of California is appropriate because:

    a.  Defendant conducts substantial business in California;

    b.  Maintains its principal offices in California; and

    c.  A significant number of Class members reside in California.

## COUNT ONE: VIOLATIONS OF CAL. CIVIL CODE §§ 1750 ET SEQ.
## (CONSUMERS LEGAL REMEDIES ACT)

63. Plaintiffs repeat and reallege the allegations made above as if fully set forth herein.

64. Plaintiffs bring this claim individually and on behalf of the Class against Defendant.

65. At all times relevant hereto, Plaintiffs and each Class member were "consumers," as that term is defined in Cal. Civ. Code § 1761(d).

66. At all times relevant hereto, the personalized dating services provided by IJL constituted a "service," as that term is defined in Civ. Code § 1761(b).

67. At all times relevant hereto, IJL constituted a "person," as that term is defined in Civ. Code § 1761(c).

68. At all times relevant hereto, Plaintiffs' and each Class member's purchase of service through the IJL contracts constituted a "transaction," as that term is defined in Civ. Code § 1761(e).

69. Cal. Civ. Code § 1770(a) provides in relevant part that "[t]he following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or

that results in the sale or lease of goods or services to any consumer are unlawful" when:

    (5)  Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have.

    (9)  Advertising goods or services with the intent not to sell them as advertised.

    (10) Advertising goods or services with intent not to supply reasonably expectable demand, unless the advertisement discloses a limitation of quantity.

70. IJL's representation that it provides personalized dating services, when the Company randomly matches its members, is a violation of Cal. Civ. Code 1770(a)(5).

71. IJL's advertisement, that it provides personalized dating services in select cities, and its salespersons' claims that other single members exist in the potential client's area, are a violation of Cal. Civ. Code 1770(a)(9).

72. IJL has also violated, and continues to violate, Civ. Code § 1770(a)(10) when it advertises to members that other users exist in their locality when the Company has knowledge that it is unable to provide matchmaking services to that member.

73. Pursuant to Cal. Civ. Code § 1780(a), Plaintiffs seek an order enjoining Defendant from engaging in the methods, acts, and practices alleged herein.

74. Pursuant to Civ. Code § 1782, Plaintiffs have given notice to Defendant of Plaintiffs' intention to file an action under Civ. Code §§ 1760 et seq. unless Defendant corrects or otherwise rectifies the consumer fraud resulting from their misrepresentations.

75. Also pursuant to Cal. Civ. Code § 1782, if Defendant does not "correct or otherwise rectify" its illegal acts within 30 days, Plaintiffs intend to amend this Complaint to add claims for:

      a.  Actual damages;

      b.  An order enjoining the methods, acts, or practices of the Company;

      c.  Restitution of money to Plaintiffs and Class members;

      d.  Punitive damages;

      e.  Attorneys' fees and costs; and

      f.  Any other relief that this Court deems proper.

## COUNT TWO: VIOLATIONS OF CAL. BUS. & PROF. CODE §§ 17200 ET SEQ. (UNFAIR COMPETITION)

76. Plaintiffs repeat and reallege the allegations made above as if fully set forth herein.

77. Cal Bus. & Prof. Code §§ 17200 et seq. prohibits all unlawful, unfair, or fraudulent business practices and acts. Said statute is liberally construed to protect the public.

78. Plaintiffs have standing to bring a claim under Cal Bus. & Prof. Code §§ 17200 et. seq. because Defendant's company and principal place of business are in California. California Law, including §§ 17200 et seq., clearly applies to this dispute in accordance with California "conflict of law" principles.

79. In committing the acts alleged herein, Defendant has engaged and continues to engage in an unlawful, unfair, and deceptive business practices in violation of Cal. Bus. & Prof Code §§ 17200 et seq. Defendant's wrongful conduct alleged herein is part of a pattern or generalized course of conduct that occurred and continues to occur in the ordinary course of Defendant's business. Thus, Defendant's conduct impacts the public interest.

80. Defendant's acts and practices have and are likely to deceive consumers.

81. Defendant's acts and practices are unlawful because they violate Civ. Code §§ 1572, 1573, 1709, 1710, 1770(a)(5), 1770(a)(9), 1770(a)(10); Cal. Bus. & Prof. Code §§ 17500 et seq.; and 18 U.S.C. §§ 1341 and 1343.

82. Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiffs, on behalf of themselves and all members of the class, seek an order of this Court permanently enjoining Defendant from continuing to engage in their unfair and unlawful conduct as alleged herein. Plaintiffs also seek an order awarding full restitution of all monies wrongfully obtained.

**COUNT THREE: VIOLATIONS OF CAL. BUS. & PROF. CODE §§ 17500 ET SEQ. (FALSE ADVERTISING)**

83. Plaintiffs repeat and reallege each of the allegations made above as if fully set forth herein.

84. Plaintiffs bring this claim individually and on behalf of the Class against Defendant.

85. During the Class Period, Defendant marketed, advertised, and sold to the public their matchmaking service on a nationwide basis, including in California.

86. Defendant has engaged in the advertising and marketing alleged herein with the intent to directly or indirectly induce the purchase of IJL's services.

87. Defendant's advertisements and marketing contained representations that IJL dating services were personalized. At the time it made and disseminated the statements alleged herein, Defendant knew or should have known that the statements were untrue, deceptive, or misleading, and acted in violation of Cal. Bus. & Prof. Code §§ 17500 et seq.

88. Defendant actively concealed its knowledge that its actions were completely contradictory to previous representations made to consumers.

89. Defendant's acts of untrue and misleading advertising present a continuing threat to consumers because such advertisements induce consumers to participate in IJL's service, which is then operated under false pretenses.

90. As a result of the violations of California law described above, Defendant has been and will continue to be unjustly enriched at the expense of Plaintiffs and the members of the Class.

91. As a result of the violations of California law described above, Plaintiffs and the members of the Class have suffered injury in fact and have lost money.

92. Plaintiffs seek restitution, injunctive relief, and all other relief allowable under Bus. & Prof. Code §§ 17535 et seq.

## COUNT FOUR: VIOLATIONS OF CAL. CIVIL CODE §§ 1709, 1710 (FRAUD AND DECEIT)

93. Plaintiffs repeat and reallege each of the allegations made above as if fully set forth herein.

94. Plaintiffs bring this claim individually and on behalf of the Class against Defendant.

95. Cal. Civ. Code § 1709 prohibits willful deception of another with intent to induce a detrimental change in position.

96. Cal Civ. Code § 1710 provides, in relevant part that "deceit . . . is either:

    (1) The suggestion, as a fact, of that which is not true, by one who does not believe it to be true;

    (2) The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true;

(3) The suppression of a fact, by one who is bound to disclose it,

or who gives information of other facts which are likely to

mislead for want of communication of that fact; or,

(4) A promise, made without any intention of performing it."

97. Defendant has violated and continues to violate Civ. Code § 1710(1) by claiming that IJL services were convenient and personalized, and that many potential dates would be available for members in their region when, in reality, other members did not exist in that region.

98. Defendant has violated and continues to violate Civ. Code § 1710(2) by asserting the above claims because members do not have a reasonable ground to believe them to be untrue.

99. Defendant has violated and continues to violate Civ. Code § 1710(3) by suppressing the falsity of the above claims.

100.     Defendant has violated and continues to violate Civ. Code § 1710(4) by continuing to promise the above without any intention of performance.

101. Plaintiffs and members of the Class were harmed by Defendant's claims regarding the quality of dating services because they would not have entered into contracts had they known that they were offered under false pretenses and with misleading representations.

102. Pursuant to Cal. Civ. Code § 1709, Defendant is liable for any damage which was proximately caused to Plaintiffs and members of the Class by Defendant's deceit.

## COUNT FIVE: VIOLATIONS OF CAL. CIVIL CODE § 1572
## (ACTUAL FRAUD)

103. Plaintiffs repeat and reallege each of the allegations made above as if fully set forth herein.

104. Plaintiffs bring this claim individually and on behalf of the Class against Defendant.

105. Cal. Civ. Code § 1572 provides, in relevant part:

> [a]ctual fraud. . . consists in any of the following acts, committed by a party to the contract, or with his connivance, with intent to deceive another party thereto, or to induce him to enter into the contract:
>
> (1)  The suggestion, as a fact, of that which is not true, by one who does not believe it to be true;
>
> (2) The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true;
>
> (3)  The suppression of that which is true, by one having knowledge or belief of the fact;
>
> (4)  A promise made without any intention of performing it; or,
>
> (5)  Any other act fitted to deceive.

106. Defendant has violated and continues to violate Civ. Code § 1572(1) by suggesting that its services were personalized and other members existed in each member's region, when it knew these claims not to be true.

107. Defendant has violated and continues to violate Civ. Code § 1572(3) by suppressing the fact other members did not exist in members' regions or that they were unable to match members based on their preferences.

108. Defendant has violated and continues to violate Civ. Code § 1572(4) by promising that its dating services are personalized.

109. Defendant has violated and continues to violate Civ. Code § 1572(5) by making false misrepresentations which were intended to lure its customers into contracts.

110. As a direct and proximate result of Defendant's fraud, Plaintiffs and the members of the Class have and will continue to suffer damages.

111. Plaintiffs seek damages against Defendant including but not limited to disgorgement of all proceeds Defendant obtained from the contracts entered into with Plaintiffs and the members of the Class as well as pre-judgment interest and costs.

### COUNT SIX: FRAUDULENT INDUCEMENT

112. Plaintiffs repeat and reallege each of the allegations made above as if fully set forth herein.

113. IJL knowingly makes a host of representations that are material in fact on their website, in their ads, and during the initial sales calls. IJL consistently misrepresents the nature of the services it provides.

114. Plaintiffs and Class members rely on those material misrepresentations to their detriment by entering into contracts with IJL for several thousand dollars.

115. Plaintiffs and Class members suffered monetary damages and other losses as a result of IJL's fraudulent inducement in an amount to be determined at trial.

### COUNT SEVEN: FRAUD

116. Plaintiffs repeat and reallege each of the allegations made above as if fully set forth herein.

117. IJL misrepresented material facts to Plaintiffs and Class members and concealed material facts from them, and otherwise used certain tricks, devices, and schemes to conduct and accomplish a fraud against Plaintiffs.

118. IJL's misrepresentations and concealment include, among other things, representations that IJL would provide personalized dating services.

119. Notwithstanding these representations, IJL knew its promises to clients were untrue, but nonetheless continued to represent otherwise.

120. IJL had actual knowledge of its misrepresentations and concealment because in 2019, IJL settled a class action where plaintiffs claimed the Company defrauded approximately 170,000 members into signing up for the Company's services. The more than two-year-long investigation of IJL revealed similar facts, where the Company, among other things, claimed to arrange dates based on members' specific requirements.

121. These and other misrepresentations and concealment of material fact by Defendant were false when made, or were made with reckless disregard for the truth, and Plaintiffs and Class members did not discover the true facts until after they had acted in reliance on IJL's misrepresentations and omissions. Nor could Plaintiffs and Class members have discovered, with reasonable diligence, the true facts for themselves prior to taking such action.

122. Plaintiffs reasonably believed IJL's misrepresentations to be true at the time they were made. IJL's conduct shows that its misstatements and omissions were targeted to Plaintiffs and Class members and were intended to, and did, result in Plaintiffs' reliance thereon.

123. By reason of fraudulent conduct of IJL, Plaintiffs and Class members have suffered actual and consequential damages, including, without limitation, substantial costs and expenses in an amount to be determined at trial, and are further entitled to an appropriate award of punitive damages, in an amount sufficient to deter IJL from engaging in such willful and malicious wrongdoing in the future.

## COUNT NINE: UNJUST ENRICHMENT

124. Plaintiffs repeat and reallege each of the allegations made above as if fully set forth herein.

125. Plaintiffs and the Class members were fraudulently induced by IJL to enter into contracts with Defendant and, in turn, pay fees to Defendant.

126. The fees paid to Defendant by Plaintiffs and Class members far exceeded the reasonable value of the services rendered by Defendant.

127. By refusing to adequately provide services to Class members, Defendant has benefited at the expense of Plaintiffs and Class members and continues to do so through the present.

128. Plaintiffs seek an order requiring Defendant to:

    a.  Make full restitution of all monies wrongfully obtained; and

    b.  Disgorge all ill-gotten revenues.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs pray that this Court enter judgment against Defendant as follows:

(a)  An order certifying the Class, and appointing Plaintiffs and their undersigned counsel of record to represent the Class;

(b)  A permanent injunction enjoining Defendant, its partners, joint ventures, subsidiaries, agents, servants, and employees, and all persons acting under or in concert with it, directly or indirectly, or in any manner, form or in any way engaging in the practices set forth herein;

(c)  A permanent injunction enjoining Defendant, its partners, joint ventures, subsidiaries, agents, servants, and employees, and all persons acting under or in concert with it, directly or indirectly, or in any manner, form or in any way utilizing any monies acquired by Defendant's unfair business practices, including all profits, revenues, and proceeds both direct and indirect;

(d)  Imposition of a constructive trust upon all monies and assets Defendant has acquired as a result of its unfair practices;

(e)  Compensatory damages and full restitution of all funds acquired from Defendant's unfair business practices, including disgorgement of profits;

(f)  Actual damages suffered by Plaintiffs and Class members;

(g)  Punitive damages, to be awarded to Plaintiffs and each Class member;

(h)  Costs of suit herein;

(i)  Investigation costs;

(j)  Both pre- and post-judgment interest on any amounts awarded;

(k)  Payment of reasonable attorneys' fees;

(l)  Declaratory relief; and

(m) Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiffs demand trial by jury on all issues so triable.

1   Dated: New York, New York
2           November 11, 2020
3
4
5                              By:
6                                John G. Balestriere*
7                                Matthew W. Schmidt
8                                **BALESTRIERE FARIELLO**
9                                225 Broadway, 29th Floor
10                               New York, New York 10007
11                               Telephone:    (212) 374-5401
12                               Facsimile:     (212) 208-2613
13                               john.balestriere@balestrierefariello.com
14                               matthew.schmidt@balestrierefariello.com
15                               *Attorneys for Plaintiffs and the Class*
16                               *Pro hac vice application forthcoming*
17