John G. Balestriere*
Matthew W. Schmidt (Cal. Bar No. 302776)
**BALESTRIERE FARIELLO**
225 Broadway, 29th Floor
New York, New York 10007
Telephone: (212) 374-5401
Facsimile:   (212) 208-2613
john.balestriere@balestrierefariello.com
matthew.schmidt@balestrierefariello.com
*Attorneys for Plaintiffs and the Class*
*Pro hac vice application forthcoming*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ROSANNE VRUGTMAN, TAMMY GILLINGWATER,** and **NICOLE KRUZICK,** individually, and for all others similarly situated,<br><br>                Plaintiffs,<br><br>    –against–<br><br>**IT'S JUST LUNCH INTERNATIONAL LLC, IJL US LLC, IJL CANADA INC.**<br><br>                Defendants. | Case No.: 5:20-cv-02352-JGB-SP<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT**<br><br><u>**JURY TRIAL DEMANDED**</u> |

**NATURE OF THE CASE**

1. It's Just Lunch International ("IJL Corporate," or the "Company"), promotes itself as a premier dating service, offering to connect individuals interested in romantic relationships. The Company claims its highly trained experts offer personalized, sophisticated, and thoughtful matchmaking services.

2. These claims are false. In 2007, 170,000 class members brought a suit against IJL Corporate and its franchisees, ending with a settlement that not only provided millions in compensation to such class members, but also was supposed to end the Company's misconduct.

3. Instead, IJL Corporate continues to engage in similar misconduct. The Company, through its individual franchises including IJL US LLC ("IJL US") and IJL Canada Inc. ("IJL Canada"), fraudulently induces single professionals, especially women, into contracts by promising them that the Company has multiple matches in its database.

4. Members pay thousands of dollars for IJL Corporate's services only to discover that Defendants either select matches at random or that Defendants lie about having other members in their region.

5. IJL Corporate, IJL US, and IJL Canada are in violation of consumer protection laws and are also liable for common law claims of fraudulent inducement and fraud.

**JURISDICTION AND VENUE**

6. This Court has subject matter jurisdiction over this class action pursuant to 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005, because the matter in controversy exceeds $5,000,000, exclusive of interest and costs, and is a class action in which some members of the Class are citizens of states other than where Defendants are headquartered. *See* 28 U.S.C. § 1332(d)(2)(A).

7.  This Court has personal jurisdiction because IJL Corporate's principal place of business is in California, conducts business in California, and otherwise intentionally avails itself of the markets in California. IJL Corporate also markets and promotes its services in California.

8.  This Court has personal jurisdiction because IJL US conducts business in California and otherwise intentionally avails itself of the markets in California. IJL US markets and promotes its services in California as well.

9.  This Court has personal jurisdiction over IJL Canada because it accesses IJL Corporate's data control center that is based in California and receives a sales script that is issued by IJL Corporate in California.

10. Pursuant to 28 U.S.C. § 1391(a), venue is proper in the Central District of California because IJL resides in this District at 74130 Country Club Drive, Suite 202, Palm Desert, California 92260.

## PARTIES

11.  Plaintiff Nicole Kruzick is an individual residing in Venice, California and joined IJL on June 25, 2020.

12.  Plaintiff Rosanne Vrugtman is an individual residing in Staunton, Virginia and joined IJL on July 20, 2020.

13.  Plaintiff Tammy Gillingwater is an individual residing in Toronto, Canada and joined IJL on September 24, 2019.

14.  Defendant IJL Corporate is located at 74130 Country Club Drive, Suite 202, Palm Desert, California, 92260.

15.  Defendant IJL US is located at 701 S Carson Street Suite 200, Carson City, Nevada, 89701.

16.  Defendant IJL Canada is located at 8 King Street East, #508, Toronto, Ontario, M5C 1B5.

## STATEMENT OF FACTS

### IJL's Origins

17. IJL Corporate, which advertises its services as "dating for busy professionals," was founded in 1991 in Chicago by a marketing executive named Andrea McGinty.

18. Since its formation, IJL Corporate has had tens of thousands of clients around the world, including in the United States, Canada, Australia, the United Kingdom, and Ireland.

19. IJL Corporate exercises complete dominion over its franchises around the world, which are independently owned and operated.

### IJL Corporate's Advertising and Marketing

20. On its website, IJL Corporate claims to have a process of "6 easy steps" to match members. IJL Corporate claims its service utilizes a "signature matchmaking process" that the Company has "fine-tuned over the past 29 years."

21. In step one of the matchmaking process, IJL Corporate's "dating specialist" interviews members to learn what they are "looking for in a potential partner, what's worked for [them] in past relationships and – just as importantly – what hasn't worked."

22. In step two, IJL Corporate's "matchmaker" uses the information from the interview to find "the right match" for the member. The Company promises members that its matchmakers are "committed to knowing their clients, not just on paper, but on a true human level thanks to our regular interaction and communication with you."

23. In step three, IJL Corporate arranges a time and place for their members to meet on a date.

24. In step four, after the date, IJL Corporate collects feedback to "fine-tune" their matchmaking process.

25. In step five, IJL Corporate offers members the option to place their membership on hold if the date is successful. IJL Corporate's matchmaking process concludes with step six, which encourages members to "have fun at every step and enjoy the adventure of meeting someone new."

### It's Just Lunch's Lies and Misrepresentations

26. Members, however, do not have fun because IJL Corporate disregards the "6 easy steps" process. In fact, IJL Corporate fails to regularly communicate and interact with its member clients.

27. Moreover, the Company does not provide "personalized hand-selected matches" when it selects matches at random, if it provides matches at all.

28. But IJL Corporate asserts its "6 easy steps" process on its website and directs its franchisees to induce prospective customers into joining the Company's platform, where members may pay as much as $4,600 for six dates.

29. On sales calls, IJL US and IJL Canada regularly claim they have "multiple matches in mind" for prospective customers when, in reality, other members do not even reside in the customer's region.

30. In the past, IJL Corporate has provided its franchisee's sales representatives with scripts or other sets of instructions that it directed them to follow during intake calls.

31. In those sales scripts, IJL Corporate directed its sales representatives to make specific false statements, including that the representative had specific matches already in mind—thereby fraudulently inducing member sign-ups by creating a false sense of urgency.

32. While the specifics of IJL Corporate's current internal practices are uniquely within the knowledge of IJL Corporate and its franchisees, its

current methods in practice are achieving the same fraudulent results: inducing clients to sign up for It's Just Lunch under false pretenses.

33. As a result, Plaintiffs and Class members are fraudulently induced into entering into a contract based on either the franchisor or franchisee's misrepresentation of fact that was material.

**Canadian Plaintiff Tammy Gillingwater's Complaint Against IJL Canada**

34. Plaintiff Tammy Gillingwater ("Gillingwater") signed up for IJL Canada's services on September 24, 2019. Gillingwater learned about IJL Corporate's "6 easy steps" process on IJL Canada's website and in her initial call with IJL Canada's matchmaker and sales representative.

35. IJL Canada's matchmaker asked Gillingwater to describe her ideal partner. Gillingwater described as a fit man with a healthy lifestyle. At that point, IJL Canada's representative interrupted Gillingwater to exclaim, "John!"

36. John, the representative explained, was one of the men she had in mind for Gillingwater. The matchmaker further explained that she had "a couple of people in mind" for Gillingwater if she signed up for the service.

37. The representative went beyond IJL Corporate's "6 easy steps" process and promised to match Gillingwater with a date within forty-eight hours of her signing a contract with IJL Canada.

38. In light of IJL Corporate's website and the matchmaker's verbal representations, based on a script or a set of instructions from IJL Corporate, Gillingwater signed a six-month agreement with IJL Canada for $6,160 CAD (approximately $4,700 USD).

39. But IJL Canada did not arrange a date for Gillingwater within forty-eight hours. In fact, Gillingerwater had to follow up with IJL Canada on multiple occasions before the matchmaker arranged her first date, which was several days later than initially promised.

40. Gillingwater, who was eager to move forward with IJL Canada's costly dating services, met her first date in October 2019.

41. Gillingwater's first date was not only materially late, but also a scam. Her first date described himself as a friend of IJL Canada's director of sales and explained how he was asked to go on dates with female members because IJL Canada did not have enough male members.

42. Gillingwater, hoping that the Company's services would improve, proceeded to go on a date with another member that IJL Canada connected her to.

43. Her second date, however, told her he was not a current member of It's Just Lunch and that the Company had also asked him to go on dates with their female members as they did not have enough male members.

44. IJL Canada, employing IJL Corporate's script, induced Gillingwater into a contract by maintaining that the Company could match her with other members, a fact Gillingwater had relied on in her decision to join IJL Canada.

**Virginia Plaintiff Rosanne Vrugtman's Complaint Against IJL US**

45. Plaintiff Rosanne Vrugtman ("Vrugtman") was induced to sign up for IJL US's services with similar misrepresentations of fact that were material to her decision to join IJL US.

46. Vrugtman joined IJL US on July 20, 2020.

47. Vrugtman decided to call IJL US after she learned on IJL Corporate's website that they had matches available in Charlottesville, Virginia.

48. In her initial call with IJL US, Vrugtman expressed her interest in meeting men with similar interests in the Charlottesville area.

49. Immediately, the matchmaker supposedly confirmed to Vrugtman that IJL US had several matches available in the Charlottesville area.

50. Vrugtman, based on the matchmaker's representation that IJL US had other members in the Charlottesville area, paid $2,595 for twelve months of service from IJL US.

51. But Vrugtman's first date was in Richmond, Virginia, a two-hour drive from the Charlottesville area. Vrugtman also realized, upon meeting her date, that IJL US did not hand select her match, as he had nothing in common with her.

52. Following her date in Richmond, Vrugtman provided feedback on IJL US's failure to connect her with a match in Charlottesville.

53. Vrugtman was introduced to another matchmaker, who continued to maintain that IJL US had matches for Vrugtman in or near Charlottesville but insisted on a date in Richmond.

54. When Vrugtman raised her concerns, the matchmaker claimed that Vrugtman was acting "rough around the edges."

55. Vrugtman proceeded to work with the matchmaker to learn about another man, who the matchmaker said may live in Charlottesville.

56. When Vrugtman inquired further about the possible date and if he was actually in Charlottesville, the matchmaker replied that she would have to check, as "he is not my client."

57. The matchmaker ultimately canceled the date.

58. Vrugtman, like Gillingwater, was induced by IJL Corporate's website and initial marketing calls to join a service that does not provide personalized matches.

59. IJL US, it turns out, is in the business of randomly matching its members, if they are members at all, and does not offer authentic dates, despite its supposed commitment to providing personalized services.

**California Plaintiff Nicole Kruzick's Complaint Against IJL US**

60. Plaintiff Nicole Kruzick ("Kruzick") signed up for IJL US's services on July 20, 2020.

61. IJL US contacted Kruzick after she completed a contact form on IJL Corporate's website.

62. On a sales call, an IJL US representative asked Kruzick to describe her ideal date and explained IJL Corporate's "6 easy steps" process. After hearing Kruzick's description, the representative promised Kruzick that IJL US could set her up on two or three dates every month in California.

63. About halfway through the call, the representative exclaimed that she "already had someone in mind" for Kruzick and that IJL US could set her up on a date with this individual as early as the following week.

64. Kruzick, induced by the representative's claim that she had a match in mind, which was based on IJL Corporate's script, paid $2,495 to IJL US for either twelve dates or six months of service.

65. Shortly thereafter, a matchmaker followed up with Kruzick but had no knowledge of the sales representative's promises, including that the representative had a specific match supposedly in mind, nor any knowledge of Kruzick's personal profile. Ultimately, IJL US never connected Kruzick with two to three dates every month, as promised, and never introduced her to the individual the sales representative claimed to have had in mind.

**It's Just Lunch's Fraud**

66. In every Plaintiff's experience, either IJL Canada or IJL US took the opportunity to misrepresent the IJL Corporate's matchmaking services on intake calls.

67. To induce member sign-ups, matchmakers representing the franchisees IJL Canada and IJL US stated that they had specific matches in mind or other matches in the area, that they would set members up on a

specific number of handpicked dates every month, and that they would only introduce members to other members.

68. IJL US and IJL Canada, who have access to IJL Corporate's database that likely includes the number of members in each area and their race, gender, employment, and other relevant information, had clear knowledge of their false statements.

69. Plaintiffs reasonably relied on IJL Corporate's promises and spent several thousands of dollars to join a Company that has failed to deliver on the matchmaking services that it promised.

## CLASS ACTION ALLEGATIONS

70. Plaintiffs bring this class action pursuant to Federal Rule of Civil Procedure 23 ("Rule 23") in their representative capacity on behalf of themselves and the Class of all other IJL clients similarly situated. Plaintiffs seek to represent the following independent, standalone state classes (the "Class" or "Classes"):

**California Subclass:**

All California citizens who joined IJL US on or after September 12, 2019.

**Canada Subclass:**

All Canadian citizens who joined IJL Canada on or after September 12, 2019.

**Virginia Subclass:**

All Virginia citizens who joined IJL US on or after September 12, 2019.

71. **Numerosity**. Although the exact number of Class members is presently unknown to Plaintiffs (though it is known to Defendants), Plaintiffs believe that there may be thousands of consumers. There are enough Class members to support a new action. The members of the Classes are so numerous that joinder of all members is impracticable.

72. **Commonality**. A substantial pool of questions of law and fact exists that is common to the Classes. Such common questions include, but are not limited to:

    a. Did IJL Corporate, IJL Canada, and IJL US make false and misleading representations as to the nature and quality of dating services that IJL provided?

    b. Did IJL Corporate, IJL Canada, and IJL US fraudulently induce Class members to enter into agreements by affirmatively misrepresenting the quantity or characteristics of its members?

    c. Did IJL US's and IJL Canada's representatives follow a script or any other specific set of directions, provided by IJL Corporate, to make representations to prospective clients?

73. **Typicality**. Plaintiffs' claims are typical of the claims of the Classes. Plaintiffs are ordinary IJL US and IJL Canada clients who, along with all Class members, entered into contracts in which they paid thousands of dollars for services which they would not have paid for if they had not been misled by Defendants into believing that the Company had a database of dates to provide personalized matchmaking services. The factual bases of Defendants' misconduct is common to all Class members.

74. **Adequacy**. Plaintiffs will fairly and adequately protect the interests of the Classes. Plaintiffs have no interests that are antagonistic to or in conflict with the interests of the Classes as a whole, and Plaintiffs have engaged competent counsel experienced in the prosecution of complex and class litigation.

75. **Superiority.** A class action is superior to the alternatives, if any, for the fair and efficient adjudication of the controversy alleged herein, because such treatment will permit the large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently,

and without duplication of the evidence, effort, and expense that numerous individual actions would engender due to the geographically diverse locations of the various Class members. This action will result in the orderly and expeditious administration of the Classes' claims. Uniformity of decisions will be assured, thereby avoiding the risk of inconsistent and varying determinations.

76. Plaintiffs are not aware of any difficulty that will be encountered in the management of this litigation which would preclude its maintenance as a class action.

77. **Maintainability**. This action is properly maintainable as a class action for the prior independent reasons and under the following portions of Rule 23:

> a. The individual amounts of restitution involved, while significant, are generally so small that individual actions or other individual remedies are impracticable and litigating individual actions would be too costly;
>
> b. Individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation;
>
> c. Defendants have acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Classes as a whole; and
>
> d. Individual actions would unnecessarily burden the courts and waste judicial resources.

78. **Predominance.** Questions of law and fact common to members of the Classes predominate over any questions affecting only individual members.

79. Notice to the members of the Classes may be accomplished inexpensively, efficiently, and in a manner best designed to protect the rights of all Class members.

80. California, as IJL's principal place of business and known data control center, is the center of gravity for this action such that it is appropriate and consistent with existing law to certify a class of consumers, applying California law where applicable.

81. Certification of a class under the laws of California is appropriate because:

   a.  IJL Corporate conducts substantial business in California;

   b.  IJL Corporate maintains its principal offices in California;

   c.  IJL US conducts substantial business in California;

   d.  IJL Canada uses IJL Corporate's data control center in California; and

   e.  A significant number of Class members reside in California.

**CALIFORNIA CLAIMS AGAINST IJL US AND IJL CORPORATE**

**On Behalf of Plaintiff Kruzick and the California Subclass**

**COUNT ONE: VIOLATIONS OF CAL. CIVIL CODE §§ 1750 ET SEQ.**

**(CONSUMERS LEGAL REMEDIES ACT)**

82. Plaintiff Kruzick repeats and realleges the allegations made above as if fully set forth herein.

83. Plaintiff Kruzick brings this claim individually and on behalf of the California Subclass against IJL US and IJL Corporate.

84. At all times relevant hereto, Plaintiff Kruzick and each Class member were "consumers," as that term is defined in Cal. Civ. Code § 1761(d).

85. At all times relevant hereto, the personalized dating services provided by IJL US and IJL Corporate constituted a "service," as that term is defined in Civ. Code § 1761(b).

86. At all times relevant hereto, IJL US and IJL Corporate constituted a "person," as that term is defined in Civ. Code § 1761(c).

87. At all times relevant hereto, Plaintiff Kruzick and each Class member's purchase of service through the IJL US contracts constituted a "transaction," as that term is defined in Civ. Code § 1761(e).

88. Cal. Civ. Code § 1770(a) provides in relevant part that "[t]he following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer are unlawful" when:

> (5)   Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have.

> (9)   Advertising goods or services with the intent not to sell them as advertised.

> (10) Advertising goods or services with intent not to supply reasonably expectable demand, unless the advertisement discloses a limitation of quantity.

89. IJL US's representation that it provides personalized dating services when IJL Corporate randomly matches its members, is a violation of Cal. Civ. Code 1770(a)(5).

90. IJL Corporate's advertisement, that it provides personalized dating services in select cities, and its salespersons' claims that other single members exist in the potential client's area, are a violation of Cal. Civ. Code 1770(a)(9).

91. IJL US has also violated, and continues to violate, Cal. Civ. Code § 1770(a)(10) when it advertises to members that other users exist in their locality, when the IJL US has knowledge that it is unable to provide matchmaking services to that member.

92. Pursuant to Cal. Civ. Code § 1780(a), Plaintiff Kruzick seeks an order enjoining IJL US and IJL Corporate from engaging in the methods, acts, and practices alleged herein.

93. Pursuant to Cal. Civ. Code § 1782, Plaintiff Kruzick gave notice to IJL US and IJL Corporate of Plaintiff's intention to file an action under Cal. Civ. Code §§ 1760 et seq. unless both parties correct or otherwise rectify the consumer fraud resulting from their misrepresentations.

94. Also pursuant to Cal. Civ. Code § 1782, if IJL Corporate and IJL US do not "correct or otherwise rectify" their illegal acts within 30 days, Plaintiff Kruzick intends to amend this Complaint to add claims for:

  a.  Actual damages;

  b.  An order enjoining the methods, acts, or practices of the Company;

  c.  Restitution of money to Plaintiffs and Class members;

  d.  Punitive damages;

  e.  Attorneys' fees and costs; and

  f.  Any other relief that this Court deems proper.

**COUNT TWO: VIOLATIONS OF CAL. BUS. & PROF. CODE §§ 17200 ET SEQ. (UNFAIR COMPETITION)**

95. Plaintiff Kruzick repeats and realleges the allegations made above as if fully set forth herein.

96. Cal Bus. & Prof. Code §§ 17200 et seq. prohibits all unlawful, unfair, or fraudulent business practices and acts. Said statute is liberally construed to protect the public.

97. Plaintiff Kruzick has standing to bring a claim under Cal Bus. & Prof. Code §§ 17200 et seq. because IJL Corporate's principal place of business is in California and IJL US sells and markets its services in California. California Law, including §§ 17200 et seq., clearly applies to this dispute in accordance with California "conflict of law" principles.

98. In committing the acts alleged herein, IJL US and IJL Corporate have engaged and continue to engage in unlawful, unfair, and deceptive business practices in violation of Cal. Bus. & Prof Code §§ 17200 et seq. IJL US and IJL Corporate's wrongful conduct alleged herein is part of a pattern or generalized course of conduct that occurred and continues to occur in the ordinary course of their business.

99. IJL US utilizes IJL Corporate's script to unfairly convince customers that they have other matches in mind for them or that other matches in their area exist. IJL US and IJL Corporate's conduct impacts the public interest.

100. IJL Corporate and IJL US's acts and practices have and are likely to deceive consumers.

101. IJL Corporate and IJL US's acts and practices are unlawful because they violate Cal. Civ. Code §§ 1572, 1573, 1709, 1710, 1770(a)(5), 1770(a)(9), 1770(a)(10); Cal. Bus. & Prof. Code §§ 17500 et seq.; and 18 U.S.C. §§ 1341 and 1343.

102. Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff Kruzick, on behalf of herself and all members of the class, seeks an order of this Court permanently enjoining IJL Corporate and IJL US from continuing to engage in their unfair and unlawful conduct as alleged herein. Plaintiff Kruzick also seeks an order awarding full restitution of all monies wrongfully obtained.

**COUNT THREE: VIOLATIONS OF CAL. BUS. & PROF. CODE §§ 17500 ET SEQ. (FALSE ADVERTISING)**

103. Plaintiff Kruzick repeats and realleges each of the allegations made above as if fully set forth herein.

104. Plaintiff Kruzick brings this claim individually and on behalf of the California Subclass against IJL US and IJL Corporate.

105. During the Class Period, IJL US and IJL Corporate marketed, advertised, and sold to the public their matchmaking service on a nationwide basis, including in California.

106. IJL US and IJL Corporate have engaged in the advertising and marketing alleged herein with the intent to directly or indirectly induce the purchase of its services.

107. IJL US and IJL Corporate's advertisements and marketing contained representations that its dating services were personalized. At the time they made and disseminated the statements alleged herein, IJL US and IJL Corporate knew or should have known that the statements were untrue, deceptive, or misleading, and acted in violation of Cal. Bus. & Prof. Code §§ 17500 et seq.

108. IJL US and IJL Corporate actively concealed their knowledge that their actions were completely contradictory to previous representations made to consumers.

109. IJL US and IJL Corporate's acts of untrue and misleading advertising present a continuing threat to consumers because such advertisements induce consumers to participate in IJL US and IJL Corporate's service, which is then operated under false pretenses.

110. As a result of the violations of California law described above, IJL US and IJL Corporate have been and will continue to be unjustly enriched at the expense of Plaintiffs and the members of the Class.

111. As a result of the violations of California law described above, Plaintiff Kruzick and the members of the Class have suffered injury in fact and have lost money.

112. Plaintiff Kruzick seeks restitution, injunctive relief, and all other relief allowable under Cal. Bus. & Prof. Code §§ 17535 et seq.

**COUNT FOUR: VIOLATIONS OF CAL. CIVIL CODE §§ 1709, 1710**
**(FRAUD AND DECEIT)**

113.  Plaintiff Kruizck repeats and realleges each of the allegations made above as if fully set forth herein.

114.  Plaintiff Kruzick brings this claim individually and on behalf of the California Subclass against IJL US and IJL Corporate.

115.  Cal. Civ. Code § 1709 prohibits willful deception of another with intent to induce a detrimental change in position.

116.  Cal Civ. Code § 1710 provides, in relevant part that "deceit . . . is either:

(1) The suggestion, as a fact, of that which is not true, by one who does not believe it to be true;

(2) The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true;

(3) The suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or,

(4) A promise, made without any intention of performing it."

117.  IJL US and IJL Corporate have violated and continue to violate Civ. Code § 1710(1) by claiming that its services were convenient and personalized, and that many potential dates would be available for members in their region when, in reality, other members did not exist in that region.

118.  IJL US and IJL Corporate have violated and continue to violate Civ. Code § 1710(2) by asserting the above claims because members do not have a reasonable ground to believe them to be untrue.

119.  IJL US and IJL Corporate have violated and continue to violate Civ. Code § 1710(3) by suppressing the falsity of the above claims.

120. IJL US and IJL Corporate have violated and continue to violate Cal. Civ. Code § 1710(4) by continuing to promise the above without any intention of performance.

121. Plaintiff Kruzick and members of the Class were harmed by IJL US and IJL Corporate's claims regarding the quality of dating services because they would not have entered into contracts had they known that they were offered under false pretenses and with misleading representations.

122. Pursuant to Cal. Civ. Code § 1709, IJL US and IJL Corporate are liable for any damage which was proximately caused to Plaintiff Kruizck and members of the Class by IJL US and IJL Corporate's deceit.

## COUNT FIVE: VIOLATIONS OF CAL. CIVIL CODE § 1572
### (ACTUAL FRAUD)

123. Plaintiff Kruzick repeats and realleges each of the allegations made above as if fully set forth herein.

124. Plaintiff Kruzick brings this claim individually and on behalf of the California Subclass against IJL US and IJL Corporate.

125. Cal. Civ. Code § 1572 provides, in relevant part:

> [a]ctual fraud. . . consists in any of the following acts, committed by a party to the contract, or with his connivance, with intent to deceive another party thereto, or to induce him to enter into the contract:
>
> (1) The suggestion, as a fact, of that which is not true, by one who does not believe it to be true;
>
> (2) The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true;
>
> (3) The suppression of that which is true, by one having knowledge or belief of the fact;

(4) A promise made without any intention of performing it; or,

(5) Any other act fitted to deceive.

126. IJL US and IJL Corporate have violated and continue to violate Civ. Code § 1572(1) by suggesting that their services were personalized and other members existed in each member's region, when they knew these claims not to be true.

127. IJL US and IJL Corporate have violated and continue to violate Civ. Code § 1572(3) by suppressing the fact that other members did not exist in members' regions or that they were unable to match members based on their preferences.

128. IJL US and IJL Corporate have violated and continue to violate Civ. Code § 1572(4) by promising that their dating services are personalized.

129. IJL US and IJL Corporate have violated and continue to violate Civ. Code § 1572(5) by making false misrepresentations which were intended to lure their customers into contracts.

130. As a direct and proximate result of IJL US and IJL Corporate's fraud, Plaintiff Kruzick and the members of the Class have and will continue to suffer damages.

131. Plaintiff Kruzick seeks damages against IJL US and IJL Corporate including but not limited to disgorgement of all proceeds the parties obtained from the contracts entered into with Plaintiff Kruzick and the members of the Class as well as pre-judgment interest and costs.

## **VIRGINIA CLAIMS AGAINST IJL US and IJL CORPORATE**

### **On Behalf of Plaintiff Vrugtman and the Virginia Subclass**

**COUNT SIX: VIOLATIONS OF VIRGINIA CONSUMER PROTECTION ACT (VA. CODE. ANN. §§ 59.1–196, Et Seq.)**

132. Plaintiff Vrugtman repeats and realleges each of the allegations made above as if fully set forth herein.

133.  Plaintiff Vrugtman brings this Count on behalf the Virginia Subclass against IJL US and IJL Corporate.

134.  Plaintiff Vrugtman, and other members of the Virginia Subclass, are "persons" within the meaning of the Va. Code Ann. §§ 59.1–198.

135.  IJL US and IJL Corporate engaged in "consumer transactions" with Plaintiff and other Subclass members under Va. Code Ann. §§ 59.1–198.

136.  The Virginia Consumer Protection Act ("Virginia CPA") prohibits: "misrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits; misrepresenting that goods or services are of a particular standard, quality, grade, style, or model; advertising goods or services with intent not to sell them as advertising' and; using any other deception, fraud, false pretenses, false promise, or misrepresentation in connection with a consumer transaction." (Va. Code Ann. § 59.1-200(A)).

137.  IJL US and IJL Corporate has engaged in unfair or deceptive acts or practices that violated Va. Code Ann § 59.1–200(A), as described, by, among other things, representing that IJL US had matches in a region which it did not have; and advertised that it provides personalized matchmaking services.

138.  In the course of IJL US's business, it willfully failed to disclose and actively disclosed that it did not have matches in its region, such that Plaintiff Vrugtman would have to travel many hours for a potential date. Particularly in light of IJL US's representations and IJL Corporate's advertising campaign, a reasonable Plaintiff would expect personalized matchmaking services in their desired region.

139.  In purchasing IJL US's services, Plaintiff Vrugtman was deceived by IJL US's failure to disclose that it had no matches in the Charlottesville area.

140. Plaintiff Vrugtman reasonably relied upon IJL US's false misrepresentations and had no way of knowing that IJL US's representations were false and gravely misleading.

141.  As a direct and proximate result of IJL US's violations of the Virginia CPA, Plaintiff Vrugtman and the Virginia Subclass have suffered injury-in-fact and actual damage.

**NEVADA COMMON LAW AND STATUTORY CLAIMS AGAINST IJL US, IJL CORPORATE, AND IJL CANADA**

**On Behalf of All Plaintiffs**

**COUNT SEVEN: VIOLATION OF NEVADA DECEPTIVE TRADE PRACTICES ACT ("NDTPA")**

142.  Plaintiffs repeat and reallege each of the allegations made above as if fully set forth herein.

143.   Defendants engaged in deceptive trade practices in the course of its business as defined in Nevada Revised Statutes ("NRS") 598.0923, including but not limited to subsection (2) in that a "person engages in a 'deceptive trade practice' when in the course of his or her business or occupation he or she knowingly . . . [f]ails to disclose a material fact in connection with the sale or lease of goods of services."

144. In selling its matchmaking services, IJL US and IJL Canada do not disclose that it may not have other members in the customer's region.

145. Under NRS 598.0915, a "person engages in a 'trade deceptive practice' if, in the course of his or her business occupation, he or she: [k]nowingly makes a false representation as to the source, sponsorship, approval or certification of goods or services for sale or lease; knowingly makes a false representation as to affiliation, connection, association with or certification by another person; uses deceptive representations or designations of geographic origin in connection with goods or services for

1   sale or lease; knowingly makes a false representation as to sponsorship,
2   approval, status, affiliation or connection of a person therewith; and
3   knowingly makes any other false representation in a transaction."

4   146. Defendants further engaged in deceptive trade practices in the
5   course of its business as defined in NRS 598.0923, including but not limited
6   to (3) in that a "person engages in a 'deceptive trade practice' when in the
7   course of his or her business or occupation he or she knowingly fails to
8   disclose a material fact in connection with the sale or lease of goods of
9   services.

10   147. IJL US's and IJL Canada's representatives knowingly used IJL
11   Corporate's script to falsely represent that it had other matches in mind or
12   that other members resided in a customer's area.

13                **COUNT EIGHT: FRAUDULENT INDUCEMENT**

14   148.  Plaintiffs repeat and reallege each of the allegations made above as if
15   fully set forth herein.

16   149.  IJL Corporate knowingly makes a host of representations that are
17   material in fact on their website, in their ads, and its scripts or other sets of
18   instructions for its franchisees. IJL US and IJL Canada consistently
19   misrepresent the nature of the services it provides.

20   150. Plaintiffs    and    Class    members    rely    on    those    material
21   misrepresentations to their detriment by entering into contracts with IJL US
22   and IJL Canada for several thousand dollars.

23   151.  Plaintiffs and Class members suffered monetary damages and other
24   losses as a result of IJL Corporate, IJL US, and IJL Canada's fraudulent
25   inducement in an amount to be determined at trial.

26                     **COUNT NINE: FRAUD**

27   152.  Plaintiffs repeat and reallege each of the allegations made above as if
28   fully set forth herein.

153. IJL Corporate misrepresented material facts to Plaintiffs and Class members and concealed material facts from them, and otherwise used certain tricks, devices, and schemes, such as scripts for its franchisees IJL US and IJL Canada, to conduct and accomplish a fraud against Plaintiffs.

154. IJL Corporate, IJL US, and IJL Canada's misrepresentations and concealment include, among other things, representations that they would provide personalized dating services.

155. Notwithstanding these representations, IJL US and IJL Canada knew its promises to clients were untrue, but nonetheless continued to represent otherwise.

156. IJL Corporate had actual knowledge of its misrepresentations and concealment because in 2019, IJL settled a class action where plaintiffs claimed the Company defrauded approximately 170,000 members into signing up for the Company's services. The more than two-year-long investigation of IJL Corporate and its franchisees revealed similar facts, where the Company, among other things, claimed to arrange dates based on members' specific requirements.

157. These and other misrepresentations and concealment of material fact by IJL Corporate, IJL US, and IJL Canada were false when made, or were made with reckless disregard for the truth, and Plaintiffs and Class members did not discover the true facts until after they had acted in reliance on IJL's misrepresentations and omissions. Nor could Plaintiffs and Class members have discovered, with reasonable diligence, the true facts for themselves prior to taking such action.

158. Plaintiffs reasonably believed IJL Corporate, IJL US, and IJL Canada's misrepresentations to be true at the time they were made. IJL's conduct shows that its misstatements and omissions were targeted to

Plaintiffs and Class members and were intended to, and did, result in Plaintiffs' reliance thereon.

159.  By reason of fraudulent conduct of IJL Corporate, IJL US, and IJL Canada, Plaintiffs and Class members have suffered actual and consequential damages, including, without limitation, substantial costs and expenses in an amount to be determined at trial, and are further entitled to an appropriate award of punitive damages, in an amount sufficient to deter Defendants from engaging in such willful and malicious wrongdoing in the future.

## COUNT TEN: UNJUST ENRICHMENT

160.   Plaintiffs repeat and reallege each of the allegations made above as if fully set forth herein.

161.   Plaintiffs and the Class members were fraudulently induced by IJL US and IJL Canada to enter into contracts with Defendants and, in turn, pay fees to the Company.

162.  The fees paid to IJL US and IJL Canada by Plaintiffs and Class members far exceeded the reasonable value of the services rendered by the franchisees.

163.   By refusing to adequately provide services to Class members, IJL US and IJL Canada have benefited at the expense of Plaintiffs and Class members and continue to do so through the present.

164.   Plaintiffs seek an order requiring IJL US and IJL Canada to:

      a.  Make full restitution of all monies wrongfully obtained; and

      b.  Disgorge all ill-gotten revenues.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs pray that this Court enter judgment against Defendants as follows:

SECOND AMENDED COMPLAINT
Case No. 5:20-cv-02352-JGB-SP

(a) An order certifying the Class, and appointing Plaintiffs and their undersigned counsel of record to represent the Class;

(b) A permanent injunction enjoining Defendants, their partners, joint ventures, subsidiaries, agents, servants, and employees, and all persons acting under or in concert with them, directly or indirectly, or in any manner, form or in any way engaging in the practices set forth herein;

(c) A permanent injunction enjoining Defendants, their partners, joint ventures, subsidiaries, agents, servants, and employees, and all persons acting under or in concert with them, directly or indirectly, or in any manner, form or in any way utilizing any monies acquired by Defendants' unfair business practices, including all profits, revenues, and proceeds both direct and indirect;

(d) Imposition of a constructive trust upon all monies and assets Defendants have acquired as a result of their unfair practices;

(e) Compensatory damages and full restitution of all funds acquired from Defendants' unfair business practices, including disgorgement of profits;

(f) Actual damages suffered by Plaintiffs and Class members;

(g) Punitive damages, to be awarded to Plaintiffs and each Class member;

(h) Costs of suit herein;

(i) Investigation costs;

(j) Both pre- and post-judgment interest on any amounts awarded;

(k) Payment of reasonable attorneys' fees;

(l) Declaratory relief; and

(m) Such other and further relief as the Court may deem just and proper.

1

## <u>JURY DEMAND</u>

2     Plaintiffs demand trial by jury on all issues so triable.

3

4

5

6  Dated: New York, New York

7         June 14, 2021

8

9                          By:

10

11                          Matthew W. Schmidt

12                          John G. Balestriere*

13                          **BALESTRIERE FARIELLO**

14                          225 Broadway, 29th Floor

15                          New York, New York 10007

16                          Telephone:     (212) 374-5401

17                          Facsimile:     (212) 208-2613

18                          john.balestriere@balestrierefariello.com

19                          matthew.schmidt@balestrierefariello.com

20                          *Attorneys for Plaintiffs and the Class*

21                          *Pro hac vice application forthcoming*

22

23

24

25

26

1

<u>**CERTIFICATION OF SERVICE**</u>

2

*Vrugtman, et al. v. It's Just Lunch International LLC, et al.*

3

**No. 5:20-cv-02352-JGB-SP, C.D. Cal.**

4

5       The undersigned hereby certifies that on this date, the foregoing

6    document filed electronically using the Court's CM/ECF System are served

7    on counsel of record pursuant to the Federal Rules of Civil Procedure

8    through the Court's Notice of Electronic Filing generated by the CM/ECF

9    System, per L.R. 5–3.2.1.

10

11   Dated: New York, New York

12           June 14, 2021

13                                        BALESTRIERE FARIELLO

14

15                                        By:

16                                        Matthew W. Schmidt

17                                        Attorney for Plaintiffs and the Class

18

19

20

21

22

23

24