Mark R. Seiden (Admitted *pro hac vice*)
  mrseiden@jonesday.com
JONES DAY
250 Vesey Street
New York, New York 10281
Telephone: +1.212.326.3939

BROWN WEGNER LLP
Matthew K. Wegner (SBN 223062)
  mwegner@brownwegner.com
William J. Brown, Jr. (SBN 192950)
  bill@brownwegner.com
Jason P. Tkaczuk (SBN 341143)
  jtkaczuk@brownwegner.com
2010 Main Street, Suite 1260
Irvine, California 92614
Telephone: 949.705.0080

Attorneys for Defendants
IT'S JUST LUNCH INTERNATIONAL LLC and
IJL US LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSANNE VRUGTMAN, TAMMY GILLINGWATER, and NICOLE KRUZICK, individually, and for all others similarly situated, | **Case No. 5:20-cv-02352 JGB-SP** |
| Plaintiffs, | **DEFENDANTS' RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES** |
| v. | **Date of Hearing:** 06/26/2023<br>**Time:** 9:00 a.m.<br>**Courtroom:** 1 (Riverside) |
| IT'S JUST LUNCH INTERNATIONAL LLC, IJL US LLC, IJL CANADA INC., | **Before the Hon. Jesus G. Bernal** |
| Defendants. | Date filed: 11/11/2020<br>Discovery Cut-off: 03/27/2023<br>Final Pretrial Conf: 06/26/2023<br>Jury Trial: 07/11/2023 |

NOTICE IS HEREBY GIVEN THAT in view of the new requirements of the recently amended L.R. 56-1 through L.R. 56-4 of the Court's Local Civil Rules, effective June 1, 2023, Defendants It's Just Lunch International LLC and IJL US LLC file the following Response to Plaintiffs' Statement of Genuine Disputes. This Response contains the same facts and positions previously set out in IJL's Reply [Doc. No. 107], but merely arranges them in the format required by the new amended L.R. 56-3. For each response below the portion of the Reply is cited.

**STATEMENT OF UNCONTROVERTED FACTS**

| Moving Parties' Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 1. IJL's matchmaking process for Plaintiffs was performed by humans based on information and preferences gathered in personal interactions with the client. <br><br> *Evidence*: Declaration of Julie Yarworth ("Yarworth Decl.") Decl. ¶ 3; Declaration of Sandra Hatton ("Hatton Decl.") ¶ 3 | Disputed. The evidence shows that IJL's "matchmaking" process is not meaningfully "performed" by IJL's Matchmakers, nor does it meaningfully take into account stated client preferences. <br><br> *Evidence*: *See* Exhibit G at 12; Exhibit H at 12; Wilson Dep., Exhibit F, at 41:25-42:5; 43:1-2. <br> [Exhibits referenced in Opposing Party's Response are all exhibits to Plaintiffs' Opposition to IJL's Motion for Summary Judgment.] |

| Moving Parties' Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 1. Moving Parties' Response<br><br>*See* [Doc. No. 107] Defs.' Reply Br. in Support of Their Mot. for Summ. J ("Reply") at 2:19-3:7. The evidence cited by Plaintiffs does not support their conclusion. Exhibit G (Doc. 93-9) at 12 is an excerpt of IJL's Dating Specialist Manual that demonstrates IJL inputs client preferences and interests into a webform. Exhibit H (Doc. 93-10) at 12 is an excerpt of Plaintiff Vrugtman's file that lists her stated preferences that she provided to an IJL Dating Specialist during her initial interview. Exhibit F (Doc. 93-8) is an excerpt of deposition testimony from IJL's CEO that merely states the number of matchmakers employed by IJL.  None of these support Plaintiffs' assertion that "IJL's 'matchmaking' process is not meaningfully 'performed' by IJL's Matchmakers, nor does it meaningfully take into account stated client preferences." In fact, the evidence cited by Plaintiffs supports the opposite conclusion. | |

| Moving Parties' Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 2. The IJL Dating Specialists conducted personal interviews over the phone with each Plaintiff to gather the potential client's preferences, experiences and attitudes towards dating, to find matches for dating.<br><br>*Evidence*: Hatton Decl. ¶ 3; Declaration of Matthew Wegner ("Wegner Decl."), ¶ 9, Ex. J; Deposition Transcript of Julie Yarworth ("Yarworth Dep.")  48:7-50:7, Ex. 1; IJL000380 ("IJL000380") ("Client answers to interview questions" and "Criteria for who the client wants to meet") | Undisputed that IJL Dating Specialists conducted "interviews" with Plaintiffs to gather the noted information. Disputed that IJL meaningfully uses this information to find personalized matches.<br><br>*Evidence*: *See* Exhibit G at 12; Exhibit H at 12; Wilson Dep., Exhibit F, at 41:25-42:5; 43:1-2. |

2. Moving Parties' Response

*See* Reply at 2:19-3:7. The evidence cited by Plaintiffs does not support their conclusion. Exhibit G (Doc. 93-9) at 12 is an excerpt of IJL's Dating Specialist Manual that demonstrates IJL inputs client preferences and interests into a webform. Exhibit H (Doc. 93-10) at 12 is an excerpt of Plaintiff Vrugtman's file that lists her stated preferences that she provided to an IJL Dating Specialist during her initial interview. Exhibit F (Doc. 93-8) is an excerpt of deposition testimony from IJL's CEO that merely states the number of matchmakers employed by IJL.  None of these support Plaintiff's assertion that IJL does not "meaningfully use[] [information gathered from Dating Specialists' interviews with each Plaintiff] to find personalized matches." In fact, the evidence cited by Plaintiffs supports the opposite conclusion.

| Moving Parties' Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 3.  IJL's matchmaking process that was used for each of Plaintiffs involved gathering interative [*sic*] personalized feedback from successive dates to factor into selecting further dates.<br><br>*Evidence*: Yarworth Decl. ¶ 3; Hatton Decl. ¶¶ 3-4; Declaration of Mike Epstein ("Epstein Decl.") ¶¶ 3, 4 | Disputed. The facts show that IJL does not meaningfully use information gained from clients in to create "personalized matches."<br><br>*Evidence*: *See* Exhibit G at 12; Exhibit H at 12; Wilson Dep., Exhibit F, at 41:25-42:5; 43:1-2. |

3.  Moving Parties' Response

*See* Reply at 2:19-3:7. The evidence cited by Plaintiffs does not support their conclusion. Exhibit G (Doc. 93-9) at 12 is an excerpt of IJL's Dating Specialist Manual that demonstrates IJL inputs client preferences and interests into a webform. Exhibit H (Doc. 93-10) at 12 is an excerpt of Plaintiff Vrugtman's file that lists her stated preferences that she provided to an IJL Dating Specialist during her initial interview. Exhibit F (Doc. 93-8) is an excerpt of deposition testimony from IJL's CEO that merely states the number of matchmakers employed by IJL.  None of these support Plaintiff's assertion that "IJL does not meaningfully use information gained from clients in to create 'personalized matches.'" In fact, the evidence cited by Plaintiffs supports the opposite conclusion.

| Moving Parties' Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 4.  The IJL communications log for Gillingwater is over fourteen pages long and depicts dozens of communications over the course of more than a year.<br><br>*Evidence*: Wegner Decl. ¶ 9, Ex. J; Yarworth Dep. 48:7-50:7, Ex. 1; IJL000365-379 ("IJL000365-379") | Undisputed. |
| 5.  Gillingwater provided specific feedback regarding multiple dates arranged personally by IJL matchmakers, and IJL adjusted and personalized her service based on that feedback.<br><br>*Evidence*: IJL000365-379; Deposition Transcript of Tammy Gillingwater ("Gillingwater Dep.") 177:20-178:11; 202:11-18 | Undisputed that Gillingwater provided feedback to IJL. Disputed that IJL adjusted its dating "marches" [*sic*] in a meaningful way in response to just feedback.<br><br>*Evidence*: *See* Gillingwater Dep., Exhibit K, at 50:24–60:23. |
| 5. Moving Parties' Response<br><br>*See* Reply at 3:1-3:7. The portions of Plaintiff Gillingwater's deposition cited by Plaintiffs do not support their assertion. Those portions merely show that Plaintiff Gillingwater was subjectively unhappy with IJL's service. They do not indicate that IJL failed to adjust Plaintiff Gillingwater's matches based on her feedback. | |

| Moving Parties' Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 6.  Gillingwater worked with IJL for more than a year and was presented with nine potential matches.<br><br>*Evidence*: Gillingwater Dep. 200:10-203:8 | Disputed to the extent that the term "matches" suggests that the individuals that IJL selected were chosen as the result of personalized matchmaking.<br><br>*Evidence*: See Gillingwater Dep., Exhibit K, at 50:24–60:23. |
| 6. Moving Parties' Response<br><br>*See* Reply at 2:4-8. Here, Plaintiffs are merely quibbling with IJL's use of the term "matches." They do not genuinely dispute the material portions of this fact—namely, that Plaintiff Gillingwater worked with IJL for more than a year, and IJL presented nine gentlemen to her. | |
| 7.  Gillingwater was willing to go on an initial date with four of them.<br><br>*Evidence*: Gillingwater Dep. 127:13-128:1; 136:3-10; 137:11-139:9; 154:22-155:17 | Undisputed. |
| 8.  On her first date, Gillingwater reported back that she really liked the man.<br><br>*Evidence*: Gillingwater Dep. 70:19-71:3 | Undisputed. |

| Moving Parties' Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 9. On her second date, Gillingwater testified that "*I felt like he was a decent match....*"<br><br>*Evidence*: Gillingwater Dep. 136:5-17, Ex. D-47; Wegner Decl. ¶ 15, Ex. U | Undisputed. |
| 10. For the fifth match IJL presented to her, Gillingwater agreed to go on a date with him.<br><br>*Evidence*: Gillingwater Dep. 137:11-139:9 | Undisputed. |
| 11. Gillingwater was interested in a date with the ninth match IJL presented.<br><br>*Evidence*: Gillingwater Dep. 202:11-18; 155:8-15 | Undisputed that Gillingwater agreed to go on a date with the person indicted [*sic*]. Disputed to the extent that the term "matches" suggests that the individuals that IJL selected were chosen as the result of personalized matchmaking.<br><br>*Evidence*: *See* Gillingwater Dep., Exhibit K, at 50:24–60:23. |
| 11. Moving Parties' Response<br><br>*See* Reply at 2:4-8. Here, Plaintiffs are merely quibbling with IJL's use of the term "match." They do not genuinely dispute the material portion of this fact—namely, that Gillingwater was interested in a date with the ninth gentleman IJL presented to her. | |

| Moving Parties' Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 12. The ninth match was an Italian man, which Gillingwater specifically requested.<br><br>*Evidence*: Wegner Decl. ¶ 9, Ex. J; Yarworth Dep. 48:7-50:7, Ex. 1; IJL000362-382 at 374-375 ("IJL000374-375") | Undisputed. |
| 13. IJL select and introduce to Gillingwater a gentleman that she herself had independently chosen and with previously scheduled a date with, on a different dating site.<br><br>*Evidence*: Gillingwater Dep. 141:6-144:6 | Undisputed. |
| 14. Privacy around her resumption of dating is important to Vrugtman.<br><br>*Evidence*: Wegner Decl. ¶ 2, Ex. C, Deposition Transcript of Rosanne Vrugtman ("Vrugtman Dep.") 23:3-15 | Undisputed. |

| Moving Parties' Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 15. Vrugtman described herself to IJL as "very selective" in who she would date, not a "good match for *most* men" and admitted she has exceptionally high standards.<br><br>*Evidence*: Vrugtman Dep. 80:3-9; 82:4-83:22 | Undisputed. |
| 16. The location of her prospective matches was an important factor for Vrugtman.<br><br>*Evidence*: Vrugtman Dep. 37:15-18 | Undisputed. |
| 17. The contract Vrugtman signed—and reviewed and thought over for a couple of days—does not indicate Charlottesville as a designated IJL location.<br><br>*Evidence*: Vrugtman Dep. 29:13-30:15; Wegner Decl. ¶ 11, Ex. L; Yarworth Dep. 60:23-63:7; IJL000384 ("IJL000384") | Undisputed. |

| Moving Parties' Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 18. The closest designated IJL location in Vrugtman's contract is in Richmond, Virginia.<br><br>*Evidence*: IJL000384 | Undisputed. |
| 19. The only date Vrugtman went on lasted three and a half hours.<br><br>*Evidence*: Wegner Decl. ¶ 12, Ex. R; Yarworth Decl. ¶ 6; IJL000412-413 ("IJL000412-413") | Undisputed. |
| 20. Vrugtman admits that IJL cannot control the level or quality of human interaction between her and a given date.<br><br>*Evidence*: Vrugtman Dep. 50:16-51:9 ("The chemistry was a whole different thing. [IJL is] not responsible for that.") | Disputed, as the citation does not support IJL's assertion. Vrugtman testified in the cited transcript excerpt that IJL was not responsible for the "chemistry" between her and a man on a date, but was responsible for (and had failed to meet their responsibilities regarding) matching Vrugtman with a person consistent with her stated preferences and other requirements.<br><br>*Evidence*: Gillingwater Dep., Exhibit K, at 50:16-51:9. |

| Moving Parties' Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 20. Moving Parties' Response<br><br>*See* Reply at 2:9-18. Plaintiffs are disputing semantics here. This is not a genuine dispute of a material fact, as whether "level or quality of human interaction" is synonymous with "chemistry" is immaterial to Plaintiffs' claims and IJL's defenses. | |
| 21. Vrugtman was "more than happy to meet" the second and third individuals IJL presented to her.<br><br>*Evidence*: Vrugtman Dep. 52:2-22 | Undisputed. |
| 22. The second and third individuals IJL presented to Vrugtman both lived in the Charlottesville area.<br><br>*Evidence*: Vrugtman Dep. 105:17-23 | Undisputed. |
| 23. Vrugtman never met with either of the second or third matches presented to her.<br><br>*Evidence*: Vrugtman Dep. 105:24-106:4 | Disputed to the extent that the term "matches" suggests that the individuals that IJL selected were chosen as the result of personalized matchmaking.<br><br>*Evidence*: *See* Exhibit G at 12; Exhibit H at 12; Wilson Dep., Exhibit F, at 41:25-42:5; 43:1-2; Vrugtman Dep., Exhibit M, at 48:6–49:17. |

| Moving Parties' Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 23. Moving Parties' Response<br><br>*See* Reply at 2:4-8. Here, Plaintiffs are merely quibbling with IJL's use of the term "matches." They do not meaningfully dispute the material portion of this fact—namely, that Plaintiff Vrugtman never met either the second or the third gentlemen that IJL presented to her. | |
| 24. Three weeks after signing her contract, and after the single date she chose to attend, Vrugtman threatened to cancel the subscription with IJL—even though she admits the Matchmaker had not done anything wrong.<br><br>*Evidence*: Vrugtman Dep. 86:9-87:11 | Disputed that Vrugtman "admit[ed] the Matchmaker had not done anything wrong" as mischaracterizing the cited testimony. Vrugtman testified that the IJL Matchmaker in question "hadn't done anything wrong" as of August 14, 2020, because at that time Vrugtman had not "had any communication with her" at that point.<br><br>*Evidence*: Vrugtman Dep., Exhibit M, at 86:9-87:11.) Vrugtman's cited testimony further indicates that she was dissatisfied with IJL's service as a whole at that point in time. (*Id.*) |

| Moving Parties' Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 24. Moving Parties' Response<br><br>*See* Reply at 2:9-18. Plaintiffs are not genuinely disputing any material portion of this fact. Whether Plaintiff Vrugtman admitted that her Matchmaker had not done anything wrong is immaterial to Plaintiffs' claims and IJL's defenses. Plaintiffs do not dispute the material portion of this fact—namely, that Plaintiff Vrgutman threatened to cancel her subscription with IJL three weeks after signing her contract and after the only date she chose to attend. | |
| 25. Vrugtman refused to meet any matches over Zoom, the COVID-19 Pandemic notwithstanding.<br><br>*Evidence*: Vrugtman Dep. 94:1-95:3; Wegner Decl. ¶ 11, Ex. L; Yarworth Dep. 60:23-63:7, Ex. 3; IJL000391 ("IJL000391") | Undisputed. |
| 26. Vrugtman requested a new Matchmaker in communications on September 2 and September 4, she was assigned to a new one.<br><br>*Evidence*: Yarworth Decl. ¶ 4; Wegner Decl. ¶ 11, Ex. L; Yarworth Dep. 60:23-63:7, Ex. 3; IJL000391-392 ("IJL000391-392") | Undisputed. |

| Moving Parties' Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 27. IJL offered to put Vrugtman's membership on hold until another IJL venue opened in Charlottesville but she refused.<br><br>*Evidence*: IJL000391 | Undisputed. |
| 28. Just four days into Vrugtman's membership, her Matchmaker was already considering individual matches based on personalized characteristics and preferences.<br><br>*Evidence*: Wegner Decl. ¶ 11, Ex. L; Yarworth Dep. 60:23-63:7, Ex. 3; IJL000388 ("IJL000388") (Matchmaker stating: "I tried to match her with 77 year old Bayne [redacted] – he declined. I don't want to try James [redacted] or Kenneth [redacted] yet because it is her first match and it would be a huge flex on height. Michael [redacted] is [African American], and she will ONLY date Caucasian. Can't flex Kenneth or Charles on her age, they aren't interested. . . . I've gone to reports and searched, I cannot find anyone to match her with.") | Disputed that Vrugtman's IJL Matchmaker was "considering individual matches based on personalized characteristics and preferences," particularly as those terms would be understood by a reasonable consumer. The evidence shows that IJL does not select its "matches" based upon individualized or personalized determinations.<br><br>*Evidence*: *See* Exhibit G at 12; Exhibit H at 12; Wilson Dep., Exhibit F, at 41:25-42:5; 43:1-2; Vrugtman Dep., Exhibit M, at 48:6– 49:17. |

| Moving Parties' Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 28. Moving Parties' Response<br><br>*See* Reply at 2:19-3:7. The evidence cited by Plaintiffs does not support their conclusion. Exhibit G (Doc. 93-9) at 12 is an excerpt of IJL's Dating Specialist Manual that demonstrates IJL inputs client preferences and interests into a webform. Exhibit H (Doc. 93-10) at 12 is an excerpt of Plaintiff Vrugtman's file that lists her stated preferences that she provided to an IJL Dating Specialist during her initial interview. Exhibit F (Doc. 93-8) is an excerpt of deposition testimony from IJL's CEO that merely states the number of matchmakers employed by IJL. The cited portion of Exhibit M merely indicates that Vrugtman was subjectively unhappy with her only IJL date.  None of these support Plaintiffs' assertion that "IJL does not select its 'matches' based upon individualized or personalized determinations." In fact, the evidence cited by Plaintiffs supports the opposite conclusion. | |
| 29. The Matchmaker found a match for Vrugtman five days later.<br><br>*Evidence*: IJL000388 | Disputed. The evidence shows that IJL does not select its "matches" based upon individualized or personalized determinations.<br><br>*Evidence*: *See* Exhibit G at 12; Exhibit H at 12; Wilson Dep., Exhibit F, at 41:25-42:5; 43:1-2; Vrugtman Dep., Exhibit M, at 48:6–49:17. |

| Moving Parties' Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 29. Moving Parties' Response<br><br>*See* Reply at 2:19-3:7. The evidence cited by Plaintiffs does not support their conclusion. Exhibit G (Doc. 93-9) at 12 is an excerpt of IJL's Dating Specialist Manual that demonstrates IJL inputs client preferences and interests into a webform. Exhibit H (Doc. 93-10) at 12 is an excerpt of Plaintiff Vrugtman's file that lists her stated preferences that she provided to an IJL Dating Specialist during her initial interview. Exhibit F (Doc. 93-8) is an excerpt of deposition testimony from IJL's CEO that merely states the number of matchmakers employed by IJL. The cited portion of Exhibit M merely indicates that Plaintiff Vrugtman was subjectively unhappy with her only IJL date.  None of these support Plaintiffs' assertion that "IJL does not select its 'matches' based upon individualized or personalized determinations." In fact, the evidence cited by Plaintiffs supports the opposite conclusion. | |
| 30. Mike Epstein, Kruzick's assigned IJL Matchmaker, matched her with her first match, KC, because both expressed an interest in having children, were entrepreneurs, and, most importantly, had personalities that he thought would be socially compatible based on his conversations with both people and his experience as a matchmaker.<br><br>*Evidence*: Epstein Decl. ¶ 5 | Disputed. The evidence shows that Kruzick's first "match" was not based on a careful review of mutual interests and personalities, but rather a cursory review of limited information.<br><br>*Evidence: See* Exhibit G at 12; Exhibit H at 12; Wilson Dep., Exhibit F, at 41:25-42:5; 43:1-2; Kruzick Dep., Exhibit O, at 40:2– 42:7, 108:17–109:12, 112:14–17. |

| Moving Parties' Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 30. Moving Parties' Response<br><br>*See* Reply at 2:19-3:7. The evidence cited by Plaintiffs does not support their conclusion. Exhibit G (Doc. 93-9) at 12 is an excerpt of IJL's Dating Specialist Manual that demonstrates IJL inputs client preferences and interests into a webform. Exhibit H (Doc. 93-10) at 12 is an excerpt of Plaintiff *Vrugtman's* file that lists *Vrugtman's* stated preferences that she provided to an IJL Dating Specialist during her initial interview. Exhibit F (Doc. 93-8) is an excerpt of deposition testimony from IJL's CEO that merely states the number of matchmakers employed by IJL. And the portions of Kruzick's Deposition Transcript (Exhibit O) cited by Plaintiffs are patently irrelevant.  None of these support Plaintiffs' assertion that "Kruzick's first 'match' was not based on a careful review of mutual interests and personalities, but rather a cursory review of limited information." In fact, the evidence cited by Plaintiffs supports the opposite conclusion. | |
| 31. Epstein matched Kruzick with her second match (whom she declined to meet) based on her feedback from her first date with KC.<br><br>*Evidence*: Epstein Decl. ¶ 6 | Disputed. The evidence shows that IJL does not select its "matches" based upon individualized or personalized determinations.<br><br>*Evidence*: *See* Exhibit G at 12; Exhibit H at 12; Wilson Dep., Exhibit F, at 41:25-42:5; 43:1-2; Kruzick Dep. at 40:2– 42:7, 108:17–109:12, 112:14–17. |

| Moving Parties' Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 31. Moving Parties' Response<br><br>*See* Reply at 2:19-3:7. The evidence cited by Plaintiffs does not support their conclusion. Exhibit G (Doc. 93-9) at 12 is an excerpt of IJL's Dating Specialist Manual that demonstrates IJL inputs client preferences and interests into a webform. Exhibit H (Doc. 93-10) at 12 is an excerpt of Plaintiff *Vrugtman's* file that lists *Vrugtman's* stated preferences that she provided to an IJL Dating Specialist during her initial interview. Exhibit F (Doc. 93-8) is an excerpt of deposition testimony from IJL's CEO that merely states the number of matchmakers employed by IJL. And the portions of Kruzick's Deposition Transcript (Exhibit O) cited by Plaintiffs are patently irrelevant.  None of these support Plaintiffs' assertion that "IJL does not select its 'matches' based upon individualized or personalized determinations." In fact, the evidence cited by Plaintiffs supports the opposite conclusion. | |
| 32. In Kruzick's intake interview and in her welcome video conference, a Dating Specialist  and then a Matchmaker recorded information Kruzick provided about her most recent relationship, desire for a serious romantic relationship, hobbies, and interests.<br><br>*Evidence*: Wegner Decl. ¶ 10, Ex. K; Yarworth Dep. 59:12-60:17, Ex. 2; IJL000400, 410 | Undisputed. |

| Moving Parties' Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 33. Kruzick's Matchmaker used this information to hand-select her first match, which was proposed within a week of her initial meeting with her IJL Matchmaker.<br><br>*Evidence*: Epstein Decl. ¶ 5; Wegner Decl. ¶ 3, Ex. D; Deposition Transcript of Nicole Kruzick ("Kruzick Dep.") 35:6-12 | Disputed. The evidence shows that IJL does not "hand-select" matches as a reasonable consumer would understand the term.<br><br>*Evidence*: See Exhibit G at 12; Exhibit H at 12; Wilson Dep., Exhibit F, at 41:25-42:5; 43:1-2; Kruzick Dep. at 40:2–42:7, 108:17– 109:12, 112:14–17. |
| 33. Moving Parties' Response<br><br>*See* Reply at 2:19-3:7. The evidence cited by Plaintiffs does not support their conclusion. Exhibit G (Doc. 93-9) at 12 is an excerpt of IJL's Dating Specialist Manual that demonstrates IJL inputs client preferences and interests into a webform. Exhibit H (Doc. 93-10) at 12 is an excerpt of Plaintiff *Vrugtman's* file that lists *Vrugtman's* stated preferences that she provided to an IJL Dating Specialist during her initial interview. Exhibit F (Doc. 93-8) is an excerpt of deposition testimony from IJL's CEO that merely states the number of matchmakers employed by IJL. And the portions of Exhibit O cited by Plaintiffs are patently irrelevant. None of these support Plaintiffs' assertion that "IJL does not "hand-select" matches as a reasonable consumer would understand the term." In fact, the evidence cited by Plaintiffs supports the opposite conclusion. ||

| Moving Parties' Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 34. Kruzick demanded a refund before she even met the first match IJL presented to her.<br><br>*Evidence*: Kruzick Dep. 38:22-25; 41:10-1 | Disputed as to use of the term "match," as the evidence shows that IJL does not select "matches" based upon individualized or personalized determinations.<br><br>*Evidence*: See Exhibit G at 12; Exhibit H at 12; Wilson Dep., Exhibit F, at 41:25-42:5; 43:1-2; Kruzick Dep. at 40:2– 42:7, 108:17–109:12, 112:14–17. |
| 34. Moving Parties' Response<br><br>*See* Reply at 2:4-8. Here, Plaintiffs are merely quibbling with IJL's use of the term "match." They do not genuinely dispute the material portion of this fact—namely, that Plaintiff Kruzick demanded a refund before she met the first gentleman IJL presented to her. | |

| Moving Parties' Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 35. Kruzick agreed to go on a date with a match, and after meeting him decided that they were not compatible.<br><br>*Evidence*: Kruzick Dep. 41:18-23 | Disputed as to use of the term "match," as the evidence shows that IJL does not select "matches" based upon individualized or personalized determinations.<br><br>*Evidence*: See Exhibit G at 12; Exhibit H at 12; Wilson Dep., Exhibit F, at 41:25-42:5; 43:1-2; Kruzick Dep. at 40:2– 42:7, 108:17–109:12, 112:14–17. |
| 35. Moving Parties' Response<br><br>*See* Reply at 2:4-8. Here, Plaintiffs are merely quibbling with IJL's use of the term "match." They do not genuinely dispute the material portion of this fact—namely, that Plaintiff Kruzick agreed to go on a date with one gentleman presented to her. | |
| 36. Kruzick indicated she agreed to go on a second date with her first match, although the second date never took place.<br><br>*Evidence*: Wegner Decl., ¶ 13, Ex. S; Yarworth Decl. ¶;  IJL000418 ("[H]e asked me out but then cancelled the date.") ("IJL000418") | Disputed as to use of the term "match," as the evidence shows that IJL does not select "matches" based upon individualized or personalized determinations.<br><br>*Evidence*: See Exhibit G at 12; Exhibit H at 12; Wilson Dep., Exhibit F, at 41:25-42:5; 43:1-2; Kruzick Dep. at 40:2– 42:7, 108:17–109:12, 112:14–17. |

| Moving Parties' Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 36. Moving Parties' Response<br><br>*See* Reply at 2:4-8. Here, Plaintiffs are merely quibbling with IJL's use of the term "match." They do not genuinely dispute the material portion of this fact—namely, that Plaintiff Kruzick agreed to go on a second date with the first gentleman she met through IJL. | |
| 37. Less than two months into her contract, and having attended just one date, Kruzick refused to even hear of the next two matches IJL had ready for her.<br><br>*Evidence*: Kruzick Dep. 72:1-74:8, Exs. D-27 & D-28; Wegner Decl. ¶¶ 6,7, Exs. G, H | Disputed as to use of the term "match," as the evidence shows that IJL does not select "matches" based upon individualized or personalized determinations.<br><br>*Evidence*: See Exhibit G at 12; Exhibit H at 12; Wilson Dep., Exhibit F, at 41:25-42:5; 43:1-2; Kruzick Dep. at 40:2– 42:7, 108:17–109:12, 112:14–17. |
| 37. Moving Parties' Response<br><br>*See* Reply at 2:4-8. Here, Plaintiffs are merely quibbling with IJL's use of the term "matches." They do not genuinely dispute the material portion of this fact—namely, that Plaintiff Kruzick refused to hear of the next two gentlemen IJL selected for her after having attended only one date and less than two months into her contract. | |

| Moving Parties' Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 38. IJL's employees explained to Kruzick that they wanted to continue servicing her account and could not perform matchmaking service for her if she would not let them do so.<br><br>*Evidence*: Wegner Decl. ¶ 10, Ex. K; Yarworth Dep. 59:12-60:17, Ex. 2; IJL000409 ("IJL000409"; IJL000409, Yarworth Decl. ¶ 5 | Undisputed that IJL employees made the stated representations to Kruzick. |

| Moving Parties' Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 39. IJL arranged all of Gillingwater's and Vrugtman's in-person dates, making restaurant reservations and finding mutually agreeable times for them and their matches, so they did not have to do so themselves.<br><br>*Evidence*: Wegner Decl. ¶ 9, Ex. J; Yarworth Dep. 48:7-50:7, Ex. 1; IJL000366 ("IJL000366") (October 4-5, 2019 communication log entries indicating IJL set-up Gillingwater's date with Maurizio); Wegner Decl. ¶ 11, Ex. L; Yarworth Dep. 60:23-63:7, Ex. 3; IJL000389 ("IJL000389") (August 3, 2020 communication log entry indicating IJL made reservations for Vrugtman's date); Yarworth Decl. ¶ 3; Epstein Decl. ¶ 7 | Undisputed. |
| 40. IJL set-up Kruzick's videocall with her match so she did not have to.<br><br>*Evidence*: Wegner Decl. ¶ 10, Ex. K; Yarworth Dep. 60:23-63:7, Ex. 2; IJL000402-403 ("IJL000402-403") | Undisputed. |

| Moving Parties' Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 41. IJL keeps private the identities of its members, dating preferences, or history—unlike some of its well-known competitors.<br><br>*Evidence*: Yarworth Decl. ¶ 3; Epstein Decl. ¶ 3 | Undisputed. |

DATED:  June 20, 2023          BROWN WEGNER LLP


                              /s/ William J. Brown, Jr.
                              _____
                              William J. Brown, Jr.
                              Attorneys for Defendants
                              IT'S JUST LUNCH INTERNATIONAL LLC and
                              IJL US LLC

1

## **CERTIFICATE OF SERVICE**

2

3
***Vrugtman, et al. v. It's Just Lunch International LLC, et al.***
**No. 5:20-cv-02352-JGB-SP, C.D. Cal.**

4
The undersigned hereby certifies that on this date, the foregoing document and

5
its attachment filed electronically using the Court's CM/ECF System are served on

6
counsel of record pursuant to the Federal Rules of Civil Procedure through  the Court's

7
Notice of Electronic Filing generated by the CM/ECF System, per L.R. 5-3.2.1.

8

9
Dated: June 20, 2023                                    /s/ William J. Brown, Jr.

10
                                                                  William J. Brown, Jr.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28